Rev. John J. CAULFIELD, Pastor, St. Athanasius Church, et al., Plaintiffs,

v.

Peter W. HIRSCH, Regional Director For the Fourth Region, National Labor Relations Board, Defendant.

Civ. A. No. 76–279.

United States District Court, E. D. Pennsylvania.

April 13, 1976.

William B. Ball, Harrisburg, Pa., for Rev. John J. Caulfield and Rev. Thomas A. Kane.

James E. Gallagher, Jr., Philadelphia, Pa., for Rev. James G. Sherman.

Herbert G. Keene, Jr., Philadelphia, Pa., for Rev. Msgr. Frederick J. Stevenson.

C. Clark Hodgson, Jr., Philadelphia, Pa., for Rev. George R. Vermeiren.

Abigail Cooley, Asst. Gen. Counsel for Sp. Litigation, John Rother, N.L.R.B., Washington, D. C., Leonard Leventhal, Regional Atty., Region 4, N.L.R.B., Philadelphia, Pa., for defendant.

Before ADAMS, Circuit Judge, and VanARTSDALEN and FOGEL, District Judges.

## OPINION

FOGEL, District Judge.

Plaintiffs, five pastors of parish parochial elementary schools within the Archdiocese of Philadelphia, have brought this action against Defendant, the Regional Director for the Fourth Region of the National Labor Relations Board [Board]; they seek a declaratory judgment which would hold that the National Labor Relations Act [NLRA] ·29 U.S.C. § 151 et seq. is unconstitutional as applied to them; they also ask for injunctive relief from the assertion or attempted assertion of jurisdiction over Plaintiffs by Defendant, acting on behalf of the Board. They contend that the application of the NLRA to parish elementary schools will violate their rights (1) under the Establishment Clause and the Free Exercise Clause of the First Amendment; (2) under the Due Process Clause of the Fifth Amendment; and (3) under that head of the Ninth Amendment which has been held to guarantee the right to privacy. Jurisdiction is based upon 28 U.S.C. § 1331, since the action is alleged to arise under the Constitution of the United States and the amount in controversy exceeds $10,000, exclusive of interest and costs.

A three judge court was convened pursuant to 28 U.S.C. §§ 2282, 2284, on the basis that this action was one in which Plaintiffs were seeking "an interlocutory or permanent injunction restraining the enforcement, operation or execution" of the NLRA for "repugnance to the Constitution". Presently before us is Defendant's motion to dismiss the Complaint which seeks the following relief: *first*: Dismissal of the Complaint on the ground that this Court lacks subject matter jurisdiction under the provisions of the NLRA; and *second*: dissolution of the three judge court because the Complaint *does not attack an Act of Congress,* but instead seeks review of *discretionary administrative action* under the NLRA.[1] Oral argument was heard on this motion on March 8, 1976.[2] After

---

1. Also before us is a motion of the Union, (Association of Catholic Teachers; Local Union No. 1776, American Federation of Teachers, AFL–CIO) to intervene as party defendant.

2. Pursuant to the order of the court on that day, the motions were taken under advisement. Plaintiffs, however, were permitted to present testimony before Judge VanArtsdalen, sitting for the three judge court. These hearings were completed on March 25, 1976, after Judge VanArtsdalen had taken four days of testimony. None of the evidence adduced at those hearings conducted by Judge VanArts-

careful consideration of all of the issues raised by this motion, the briefs submitted by both sides, and the presentation by counsel at oral argument, we hold that the three judge court should be dissolved at this stage of the proceedings for the reasons set forth in this opinion.

## I. PROCEDURAL HISTORY OF THE CASE

The uncontested facts of record, including those stipulated by the parties, may be summarized as follows:

On January 13, 1976, the Association of Catholic Teachers, Local Union No. 1776, American Federation of Teachers, AFL–CIO [the Union] filed a representation petition, pursuant to § 9(c)(1)(A) of the NLRA, 29 U.S.C. § 159(c)(1)(A) with Defendant Peter Hirsch, the Regional Director of the Fourth Region of the Board, in which the Archdiocese of Philadelphia was designated as the employer and an election was sought in a suit comprised of "all lay teachers employed in the elementary schools of the Archdiocese of Philadelphia" (about 2000 employees). This representation proceeding was assigned as NLRB Case No. 4–RC–11987, and is titled "Archdiocese of Philadelphia." Regional Director Hirsch notified John Cardinal Krol, Archbishop of Philadelphia, of the representation petition by letter dated January 16, 1976. This letter also requested certain information relating to interstate commerce and the employer's position with respect to the petition.

Following the initial investigation as per the provisions of Section 9(c) of the NLRA, 29 U.S.C. § 159(c), Regional Director Hirsch, on January 27, 1976, issued a Notice of Representation Hearing. February 23, 1976 was set as the date for commencement of that hearing. Plaintiffs then filed this complaint in which they allege that the Board's assertion, or attempted assertion of jurisdiction is unconstitutional; they sought the issuance of a temporary restraining order, and the convocation of a three judge court.

While the Plaintiff Pastors were not named as employers in the representation petition filed by the Union, their Complaint avers that they are responsible for "all manner of employment decisions" in their respective schools, all of which are within the Archdiocese, and Plaintiffs further claim that they, the churches of which they are pastors, and the parish elementary schools which they sponsor and operate "are typical of the approximately 275 parish elementary schools sponsored and operated by parish churches throughout the Archdiocese of Philadelphia."

The Board filed a motion to dismiss this action on January 31, 1976. On February 3, 1976, Judge VanArtsdalen, the single judge to whom the case had been assigned, denied Plaintiffs' motion for a TRO, after a hearing. By Order of February 6, 1976, he denied Defendant's motion to dismiss, and called for the convening of a three judge court pursuant to 28 U.S.C. §§ 2282, 2284. Judge VanArtsdalen also held in abeyance a motion filed by the Union to intervene as a party defendant.

Regional Director Hirsch, on February 20, 1976, at the request of counsel, rescheduled the representation hearings for the Archdiocese for March 1, 1976. Hearings were in fact held on March 1, 3 and 4; these three days proved insufficient to complete the matter. Additional hearing dates were then set for March 16 and 17. On March 8, 1976, as noted, this court heard oral argument on the resubmitted motion of Defendant to dismiss the complaint, and as a result of that hearing the court held that all of the motions would be taken under advisement. Plaintiffs were permitted to go forward with their evidence before Judge VanArtsdalen, sitting for the three judge court, subject to the proviso that such proceedings were without prejudice to our consideration of the motions before this court. See note 2 *supra*. We

dalen has any effect upon the decision in this matter, limited as it is, to the issue of whether

a three judge court is appropriate at this juncture of the litigation.

specifically reserved the right to rule upon any or all of the motions after due consideration, at any time, irrespective of the stage to which those hearings had progressed. Hence, since our review of the materials submitted to us, and the controlling legal principles, as we perceive them, persuade us that dissolution of the three judge court is proper at this time, we have determined that the issuance of the Order accompanying this Opinion is appropriate.

## II. THE PROPRIETY OF A THREE JUDGE COURT

### A. The Nature of Board Procedures under the NLRA

 In claiming that the three judge court was improperly convened, Defendant places dispositive significance on the distinction between *"discretionary"* and *"ministerial"* or *"perfunctory"* administrative action under federal law. Injunctive relief sought on constitutional grounds against ministerial acts is considered an attack upon the statute itself, and a three judge court is required to hear this claim.[3] *However, when the challenged administrative actions are of a discretionary nature, the Act itself is not challenged, and the matter is one which should be determined by a single judge.* William Jameson & Co. v. Morgenthau, 307 U.S. 171, 59 S.Ct. 804, 83 L.Ed. 1189 (1939); *Sardino v. Federal Reserve Bank of New York,* 361 F.2d 106 (2d Cir. 1966); *Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175 (1969). As stated in *Woodward v. Rogers,* 344 F.Supp. 974 (D.D.C.1972) aff'd. 159 U.S. App.D.C. 57, 486 F.2d 1317 (1973):

When a complaint seeks to enjoin on constitutional grounds administrative action which is merely a perfunctory execution of a specific legislative directive, that complaint actually mounts a challenge to the legislative directive. This challenge requires the

**3.** In *Sardino v. New York,* 361 F.2d 106 (2d Cir. 1966), Judge Friendly stated:

Acts of Congress are not self-enforcing and when the executive or administrative action complained of is so plainly directed or per-

convening of a three judge court pursuant to 28 U.S.C. § 2282. However, when the complaint attacks the administrative action which is permitted but not required by broad legislative policy and which resulted from the exercise of administrative judgment and initiative, that complaint attacks the administrative action itself. This attack does not require that a three judge court be convened. *Id.* at 978.

What, then, is the nature of the administrative action challenged in this case? The pertinent provision of the NLRA is Section 9(c)(1), 29 U.S.C. § 159(c)(1), which states in relevant part:

Whenever a petition shall have been filed . . . by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees . . . wish to be represented for collective bargaining and that their employer declines to recognize their representative . . . , *the Board shall investigate such petition, and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice* . . . If the Board finds upon the record of such hearing that such a question of representation exists, it shall certify the results thereof. (emphasis supplied).

 Thus, the procedures provided for under this section are divided into four separate stages: 1) investigation upon the filing of the petition; 2) a hearing if the Board finds that a question of representation affecting commerce exists; 3) the exercise of jurisdiction by the Board following the hearing and the scheduling of an election, should the Board find upon the record that a question of representation exists; and 4) Board certification of election results.

mitted by the statute that no fair construction could hold otherwise, the constitutionality of the statute is necessarily drawn into question. *Id.* at 115.

It is significant to focus clearly upon the present status of the matter; the Board has already completed the first stage, investigation, and is now engaged in the second stage, hearings, in order to determine whether it should take jurisdiction and certify an election. Thus jurisdiction has not yet been exercised by the Board and no election has been scheduled. In contending that a three judge court is proper in this case, Plaintiffs point out that their Complaint alleges that *any* application of the NLRA to them is unconstitutional, including the investigation and hearing. They contend that even these threshold activities result in an impermissive entanglement of the Government with purely religious affairs in violation of the Establishment Clause, and that the effect has been a chilling one upon their right to free exercise of religion. They maintain that the initial investigation and hearing are ministerial (perfunctory) acts, and therefore, it is the statute which they must and do challenge; hence they conclude a three judge court was properly convened.

■ We cannot apply a broad brush to paint over the critical line which separates investigation from hearing. In resolving this issue we must distinguish between the *investigation* and the *hearing,* which are two separate steps in the certification proceedings. In the case at bar the Board *has completed its investigation and the issue is therefore moot with respect to an injunction against this initial action.* We make no determination with respect to the ministerial or discretionary character of the phrase, "shall investigate the petition" found in

Section 9(c) of the statute. We note, in fact, that the Plaintiffs did not file their Complaint in this Court until the Regional Director had scheduled the hearing, an event which followed the initial investigation, then, *fait accomplit.*

■ We do not agree with the Plaintiffs that the present stage of Board proceedings is perfunctory under the statute. Section 9(c) clearly states that a hearing shall be scheduled only if the Board finds that a question of representation which affects commerce exists. Of course, the mere existence of the word "if" does not dictate, *eo ipso,* a finding of discretionary action; our inquiry must go to the substance of Board procedure under this section.[4]

Section 101.18, NLRB, Statements of Procedure provides:

> Investigation of Petition—(a) Upon receipt of the petition in the regional office, it is docketed and assigned to a member of the staff, usually a field examiner, for investigation. He conducts an investigation to ascertain (1) whether the employer's operations affect commerce within the meaning of the act, (2) the appropriateness of the unit of employees for the purposes of collective bargaining and the existence of a bona fide question concerning representation within the meaning of the act, (3) whether the election would effectuate the policies of the act and reflect the free choice of employees in the appropriate unit, and (4) whether, if the petitioner is a labor organization seeking recognition, there is sufficient probability, based on the evidence of representation of the petitioner that

---

4. In *National Maritime Union of America, AFL–CIO v. N.L.R.B.,* 375 F.Supp. 421 (E.D. Pa.), *aff'd mem.* 506 F.2d 1052 (3d Cir. 1974), the court was called upon to review a refusal by the Board to exercise jurisdiction over an employer despite a determination that statutory jurisdiction did exist. In construing the "shall direct an election" language of Section 9(c), the court stated the following with respect to the "mandatory" nature of the words "shall" and "shall not":

> [I]t is the task of the District Court to carefully examine the provision in question, and

to determine from the context, from the structure and purposes of the Act as a whole, from prior practice in the Board and decisions in the Courts, whether the terms are indeed . . . "clear and mandatory". *Id.* at 429.

The court proceeded to hold that the words "shall direct an election" were not "clear and mandatory". This decision is guidance for our belief that the substance of the statute, not the mere words, must control our determination of the discretionary vs. ministerial question raised in Section 9(c).

the employees have selected it to represent them.

It must be noted that this procedure includes the *investigation* which is generally conducted *before* the Regional Examiner fixes a hearing date. We cannot say that the scheduling of a hearing is a categorical imperative, or an event that reflects a "rubber stamp" attitude on the part of the Board.

■ On the contrary, we think it clear from this language in the regulations that the discretion of the Board, in the persons of the field examiner and the Regional Director, must be exercised pursuant to Section 9 in connection with the decision to schedule a hearing. *See Grutka v. NLRB*, 409 F.Supp. 133 (N.D.Ind.1976). Accordingly, we find that this attack on the constitutionality of the Board hearing now being conducted is *not an assault upon the statute, but upon the actions of those charged with administration of the Act*; hence it is an attack upon the exercise of their discretion in contrast to a challenge to the performance of a mere ministerial duty. Thus it follows that the step is a discretionary one.

In this connection it should be noted that the Supreme Court has held that the NLRA grants to the Board the broadest possible jurisdictional breadth which is constitutionally permissible under the Commerce Clause; accordingly, the agency is given wide latitude in determining whether to exercise jurisdiction over a particular class of employers. *N.L.R.B. v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313, 9 L.Ed.2d 279, 281 (1963); *N.L.R.B. v. Wentworth Institute*, 515 F.2d 550 (1st Cir. 1975). Therefore, the Plaintiffs' claim for injunctive relief against the "attempted assertion" of jurisdiction by the Board is also one which raises issues to be determined by a single judge.

Plaintiffs place great reliance on *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) in support of their contention that a three judge court is required in this action. However, in *Flast* the Court expressly found that Plaintiffs were directly challenging the constitutionality of the Elementary and Secondary Education Act of 1965, and not merely its administration. We make no such finding in the case at bar, given its present posture. At this stage of the proceedings, as noted, Plaintiffs' attack must be construed as an assault upon the implementation of discretionary administrative procedures under the NLRA. Hence the matter is not properly before a three judge court.

**B. Proper Construction of the Three Judge Court Statutes**

■ Moreover, we also reach this conclusion on the basis of recent decisions which have established the clear direction of the Supreme Court strictly construing the application of the statutes governing three judge courts, 28 U.S.C. §§ 2281–2284, to those situations which are clearly mandated within the four corners of those congressional enactments. Noting that the three judge procedure constitutes a "serious drain upon the federal judicial system", the Court has stated that the apparatus is not "a measure of broad social policy to be construed with great liberality, but as an enactment technical in the strict sense of the term and to be applied as such." *Phillips v. United States*, 312 U.S. 246, 250–51, 61 S.Ct. 480, 483, 85 L.Ed. 800, 805 (1941). *See also Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

This principle of strict construction was reaffirmed in *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). The Supreme Court had to consider, inter alia, the actions of a single district court judge who had denied a motion to convene a three judge court. The complaint had raised a constitutional claim (requiring a three judge court) and a statutory claim (properly heard by a single judge); the district court, without convening a three judge court, ruled the constitutional claim insubstantial and thus not a proper matter for a three judge court, *Ex parte Poresky*, 290 U.S.

30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); he proceeded to determine the merits of the statutory claim. The Supreme Court, in approving the actions of the district court, stated:

> The procedure followed by the District Court—initial determination of substantiality and then adjudication of the "statutory" claim without convening a three judge court—may appear at odds with some of our prior decisions. *See, e. g., Brotherhood of Locomotive Engineers v. Chicago, R. I. & P. R. Co.*, 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966); *Florida Lime & Avocado Growers, Inc. v. Jacobsen*, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960). But, we think it accurately reflects the recent evolution of three-judge-court jurisprudence, "this Court's concern for efficient operation of the lower federal courts" and "the constrictive view of the three-judge [court] jurisdiction which this Court has traditionally taken," *Swift & Co. v. Wickham, supra*, 382 U.S. at 128, 129, 86 S.Ct. [258] at 268, [15 L.Ed.2d 194].

*See also Gonzalez v. Automatic Employees Credit Union*, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).[5]

We are, of course, fully aware of our duty to follow the mandate of the Acts of Congress in the manner intended by that body. We must assume on this score, however, that the absence of amendments to the pertinent acts in light of the Supreme Court's mandate of strict construction of § 2282, demonstrates compliance with Congressional intent. It is almost impossible to draw a clear line between that which is "discretionary" action and that which is "ministerial" action; we recognize that there is room for disagreement on precisely where that line should be drawn. We conclude, however, as a result of our examination of the NLRA, relevant Board procedures under the Act, and the appli-

cable case law, that the current actions of the Board, i. e., hearings and possible ensuing proceedings, are of a discretionary nature, and that this matter should, therefore, in its present posture, proceed before a single judge.

## III. CONCLUSION

Although we have determined that the three judge court should be dissolved, and that the matter should now be handled by a single judge, we made no determination with respect to the remaining contentions raised by Defendant's motion to dismiss, nor do we rule upon the merits of Plaintiffs' Complaint, nor upon their motion for preliminary and permanent injunctive relief. Finally, we make no disposition of the motion of the Union to intervene as party defendant. These matters are left for determination by Judge VanArtsdalen.

We express no views regarding the propriety of a three judge proceeding if at the conclusion of the hearing stage the Board wishes to proceed with an election.

---

**5.** While we recognize that the issue in *Gonzalez* was the right of direct appeal to the Supreme Court, and thus, not one which went specifically to the provisions of §§ 2281–84, we believe that the decision provides further evidence of the Court's determination to strictly construe the scope of the three judge court statutes.